# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORLANDO ALARCON and JUNJIE TAN, individuals, on behalf of themselves and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TARGET CORPORATION, a Corporation, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:25-cv-01276-SPG-SP<br><br>**ORDER DENYING MOTION TO REMAND [ECF NO. 16]** |

Before the Court is the Motion to Remand (ECF No. 16 ("Motion")) filed by Plaintiffs Orlando Alarcon and Junjie Tan (together, "Plaintiffs"). Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds this matter suitable for resolution without a hearing, *see* Fed. R. Civ. P. 78(b), C.D. Cal. L.R 7-15, and DENIES the Motion.

**I.   BACKGROUND**

This is a putative wage and hour class action brought against Defendant Target Corporation ("Defendant") by Plaintiffs on behalf of themselves and others who have been

employed on a non-exempt, hourly basis since May 2023 at Defendant's distribution centers in California. (ECF No. 1-1 ("Compl.")). On April 9, 2025, Plaintiffs filed this action in the San Bernardino County Superior Court, State of California. (*Id.*). The Complaint alleges nine causes of action: (1) unlawful business practices, California Business and Professions Code §§ 17200, *et seq.* ("UCL") (*id.* ¶¶ 45–59); (2) failure to pay minimum wages, California Labor Code §§ 1194, 1197, and 1197.1 (*id.* ¶¶ 60–72); (3) failure to pay overtime compensation, California Labor Code § 510 (*id.* ¶¶ 73–86); (4) failure to provide required meal periods, California Labor Code §§ 226.7 and 512 (*id.* ¶¶ 87–90); (5) failure to provide required rest periods, California Labor Code §§ 226.7 and 512 (*id.* ¶¶ 91–94); (6) failure to provide accurate itemized account statements, California Labor Code § 226 (*id.* ¶ 95–98); (7) failure to reimburse employees for required expenses, California Labor Code § 2802 (*id.* ¶¶ 99–102); (8) failure to pay wages when due, California Labor Code §§ 201–203 (*id.* ¶¶ 103–110); and (9) failure to pay sick pay wages, California Labor Code §§ 201–203, 233, and 246 (*id.* ¶¶ 111–116).

The Complaint proposes two classes:

1. The "California Class," which brings the UCL cause of action, and consisting of "all individuals who are or previously were employed by Defendant in a California distribution center, including any employees staffed with Defendant by a third party in a California distribution center, and classified as non-exempt employees at any time during the period beginning December 10, 2023, and ending on the date as determined by the Court."

2. The "California Labor Sub-Class," which brings the remaining causes of action under the California Labor Code, consisting of "all members of the California Class who are or previously were employed by the Defendant in a California distribution center, including any employees staffed with Defendant by a third party in a California distribution center, and classified as non-exempt employees at any time during the

period beginning December 10, 2023[,] and ending on the date as determined by the Court pursuant to Cal. Code of Civ. Proc. § 382."

(Compl. ¶¶ 26, 36).

On May 22, 2025, Defendant filed its answer to the Complaint in state court. *See* (ECF No. 1-5 ("Answer")). The next day, Defendant removed the action to this Court, alleging jurisdiction under The Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C § 1332(d). *See* (ECF No. 1 ("NOR") ¶ 1). On June 20, 2025, Plaintiffs filed the instant Motion, seeking to remand the case to state court and arguing that this Court does not have subject matter jurisdiction under CAFA because Defendant failed to prove with sufficient evidence an amount in controversy necessary to satisfy CAFA. (Motion at 2). Defendants oppose. (ECF No. 17 ("Opp.")). Plaintiffs have filed their reply. (ECF No. 18 ("Reply")).

## II. LEGAL STANDARD

A civil action brought in state court may be removed by a defendant to federal district court if, at the time of removal, the case is one over which the district court has original jurisdiction. 28 U.S.C. § 1441(a). CAFA confers original jurisdiction to the district courts over any class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant, the amount in controversy exceeds $5,000,000, and the number of members of all proposed plaintiff classes is at least 100. 28 U.S.C. § 1332(d). "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). "Through CAFA, Congress broadened federal diversity jurisdiction over class actions by, among other things, replacing the typical requirement of complete diversity with one of only minimal diversity." *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 882 (9th Cir. 2013).

To remove a case from a state court to a federal court, a defendant must file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The removing defendant bears the burden of establishing federal jurisdiction. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988); *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) ("If the allegation is disputed, then the party seeking

removal—and invoking the jurisdiction of the federal courts—bears the burden of demonstrating by a preponderance of the evidence that the amount in controversy exceeds $5 million."). The Supreme Court has advised that "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 89. Indeed, "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Id.* (quoting S. Rep. No. 109–14, p. 43 (2005)); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively."). "A defendant's amount in controversy allegation is normally accepted when invoking CAFA jurisdiction, unless it is 'contested by the plaintiff or questioned by the court.'" *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022) (quoting *Dart Cherokee*, 574 U.S. at 87). "When a plaintiff contests the amount in controversy allegation, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'" *Id.* (quoting *Dart Cherokee*, 574 U.S. at 87).

Where a plaintiff seeks remand of a removed action, the plaintiff may make either a "facial" or "factual" challenge to the defendant's jurisdictional allegations in the notice of removal. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). "A facial attack accepts the truth of the defendant's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.* (internal quotation marks, alteration, and citation omitted). "A factual attack contests the truth of the allegations themselves." *Id.* (internal quotation marks, alteration, and citation omitted). A defendant facing a "factual" challenge to its jurisdictional allegations bears the burden of providing "competent proof" that shows, by a preponderance of the evidence, that the jurisdictional requirements are satisfied. *Id.* at 699, 701. "[T]he removing party must be able to rely on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million, as long as the reasoning and underlying assumptions are reasonable." *Jauregui*, 28 F.4th at 993 (internal quotation marks and citation omitted). Although a plaintiff may present evidence in support of a factual attack,

the plaintiff "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *KM Indus.*, 980 F.3d at 700.

## III. DISCUSSION

Here, Plaintiffs do not challenge that Defendant has met its burden to establish diversity between the parties or that this class action seeks to represent a putative class of more than 100 members.[1] *See* 28 U.S.C. § 1332(d); (Motion). Instead, Plaintiffs dispute that Defendant has provided sufficient substantiation in its Notice of Removal that the amount in controversy in this case exceeds $5 million. (Motion at 8).

The Complaint states that the "amount in controversy for the aggregate claim of California Class Members is under five million dollars ($5,000,000)." (Compl. ¶ 5). However, Plaintiffs' Notice of Removal alleges that the amount in controversy in this case exceeds $5 million. *See* (NOR ¶ 1). Defendant's calculation of the amount in controversy in the Notice of Removal is based solely on an analysis of the Complaint's waiting time penalties cause of action, premised on California Labor Code § 203. *See* (NOR ¶ 34–45). Although Defendant provided calculations in its Notice of Removal to support an amount in controversy on this claim, Defendant provided updated calculations in support of its Opposition in the form of a declaration from Holly Brackin, a principal at Charles River Associates, with over 25 years of experience in data collection and analysis that relate to wage and hour issues. (ECF No. 17-4 ("Brackin Decl.") ¶ 5). Brackin explains that she calculated the amount in controversy for the California Labor Code § 203 claim by analyzing files from Defendant that contained timekeeping and termination data for

---

[1] The Notice of Removal asserts this is a "class action with a putative class of more than 100 members," and "any member of a class of plaintiffs is a citizen of a state different from any defendant." (NOR ¶ 1). Further, the Notice of Removal states that, between "January 1, 2024[,] to April 3, 2025, Target terminated at least 3,041 non-exempt employees from its California distribution centers" (*id.* ¶ 20), and named Plaintiffs are, "upon information and belief," residents of the State of California and Defendant is a citizen of Minnesota (*id.* ¶¶ 26–27). The Court finds these allegations sufficient to establish minimum class size and diversity under CAFA.

employees from Defendant's nine distribution centers in California. *See* (*id.* ¶¶ 6, 9). Brackin explains that, from analyzing this data, she calculated 2,260 putative class members who should be eligible for the maximum penalties available under California Labor Code § 203, consisting of employees hired by Defendant at the distribution centers on or after January 1, 2024, who were terminated prior to April 3, 2025, and who were employed by Defendant for a minimum of 30 days ("Removal Putative Class Members"). *See* (*id.* ¶ 10). The average number of hours worked per day by Removal Putative Class Members equals 9.17 hours. (*Id.*). Eighty-five percent of the shifts worked were greater than or equal to 8 hours, and 80% of the shifts worked were greater than or equal to 9 hours. (*Id.*). Brackin also uses the 2024 statutory minimum wage of $16 per hour in her calculations. (*Id.* ¶ 12). Thus, Brackin "conservative[ly]" calculates the amount in controversy on the waiting time claim as follows: (2,260 Removal Putative Class Members) x ($16 per hour) x (8 hours per day) x (30 days) = $8,678,400. *See* (*Id.* ¶¶ 11, 12, 14).

California Labor Code § 203 provides for "waiting time penalties" due to a discharged employee if an employer does not pay any wages owed to the discharged employee immediately (or, in some circumstances, within 72 hours) upon discharge. *See* Cal. Lab. Code § 203(a). The penalties accrue from the date of discharge "at the same rate until paid or until an action therefor is commenced," for up to 30 days. *See id.*

Plaintiffs argue that Defendants' calculation of the amount in controversy is supported by "unexplained, unsupported, and unreasonable assumptions" because (1) the calculation assumes a 100% violation rate; and (2) Defendant's evidence does not demonstrate the "precise ratio of full-time to part-time employees." (Motion at 14–16). Defendant disagrees and argues its calculation of an amount in controversy is "based on actual class data and on allegations [Plaintiffs] make in their own Complaint." (Opp. at 7). The Court agrees with Defendant.

Here, the waiting time penalties alleged by Plaintiffs are derivative of other claims for unpaid wages to terminated employees. *See* (Compl. ¶ 19 (alleging Defendant failed

to pay "sick pay at regular rate[s]" and "failed to pay . . . correct wages" thus entitling Plaintiffs to waiting time penalties), 72 (failure to pay minimum wages entitles Plaintiffs to waiting time penalties), 86 (failure to pay "overtime compensation" entitles Plaintiffs to waiting time penalties), 109 (failing to pay non-discretionary compensation and compensation for accrued and vested vacation and holiday time entitles Plaintiffs to waiting time penalties)); *see, e.g.*, *Haro v. Target Corp.*, 2025 WL 1898257, at *7 (C.D. Cal. July 9, 2025) (finding waiting time penalties derivative of other claims); *Duncan v. Baxalta US, Inc.*, 2025 WL 40482, at *3 (C.D. Cal. Jan. 7, 2025) (same). Plaintiffs point to no language in the Complaint to support a violation rate other than 100% with respect to the calculation of waiting time penalties, and, indeed, the Complaint more plausibly supports the inference that it seeks waiting time penalties on behalf of all members of the California Labor Sub-Class who were terminated. *See, e.g.*, (Compl. ¶¶ 9, 19 ("As a pattern and practice, Defendant regularly failed to pay Plaintiffs and other members of the California Class their correct wages and accordingly owe waiting time penalties pursuant to Cal. Labor Code § 203)). The Complaint does not include language that Defendant, "at times," failed to pay all wages, and it does not support an inference that only some members of the California Labor Sub-Class are entitled to relief. *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) ("[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'"). Thus, Defendant could reasonably assume that each of the 2,260 discharged employees identified as having been employed for more than 30 days by Defendant would "need only have suffered one [] violation at any time during their time at [Defendant] to state a claim for waiting time penalties." *See Duncan*, 2025 WL 40482, at *3; *Nisbet v. S. Tire Mart, LLC*, 2025 WL 1135091, at *5 (N.D. Cal. Apr. 16, 2025) ("The foundational premise of the complaint is that class members have still not been paid the full wages due, and given that Southern Tire Mart's calculations are more than 30 days old, the terminated employees whom it counted in those calculations were all terminated more than 30 days ago."). Additionally, by asserting a class action, the Complaint thus supports

a reasonable inference that every member of the Removal Putative Class Members would be owed the maximum penalty under California Labor Code § 203. *Haro*, 2025 WL 1898257, at *7 ("Put differently, the 100% violation rate is not only reasonable—it is a necessary condition of Plaintiffs' decision to file this putative class action case."); *see Valero v. MKS Instruments*, 2025 WL 72171, at *5 (C.D. Cal. Jan. 8, 2025) (same). Because of the language of the Complaint and the nature of Plaintiffs' class action claims, the Court finds that Defendant's use of a 100% violation rate in its calculation is based on reasonable assumptions grounded in the Complaint, and Defendant provides sufficient evidence to support its calculation of an amount in controversy on the waiting time penalties claim.

Plaintiffs' argument that Defendant fails to provide evidence of part-time or full-time employment in its calculations is immaterial to Defendant's calculation of waiting time penalties. *See* (Motion at 15–16). Here, Defendant calculated the potential waiting time penalties based on a "conservative" estimate of 8 hours worked per day for each member of the Removal Putative Class.[2] *See* (Brackin Decl. ¶ 11). Thus, Defendant provides a calculation of "the same rate" of pay that is used to calculate waiting time penalties under California Labor Code § 203(a). Plaintiffs point to no allegations in the Complaint to support that excluding part-time (or full-time employees, for that matter) from Defendant's calculation is unreasonable. And, as stated above, the Complaint supports a reasonable assumption that the all California Labor Sub-Class members would be entitled to waiting time penalties, regardless of whether they are full- or part-time.

---

[2] This "conservative" estimate is less than what Defendant's analysis of the actual data demonstrates. Defendant provides evidence that the actual average shift length per day for each Removal Putative Class Member is 9.17 hours. *See* (Brackin Decl. ¶ 10). It is reasonable to assume for purposes of this Motion that discharged employees who suffered some underlying Labor Code violation and who worked for Defendant for fewer than thirty days in the time period between December 10, 2023, and April 9, 2025, would be eligible for some amount of waiting time penalties less than the 30-day maximum, in addition to those maximum waiting time penalties calculated for the Removal Putative Class.

       The cases to which Plaintiffs cite are distinguishable. For example, Plaintiffs point to *Garcia v. ABM General Servs., Inc.*, 2025 WL 783648, at *3 (C.D. Cal. Mar. 11, 2025), where the court found that language in the Complaint was insufficient to support at 100% violation rate. Here, by contrast, the Complaint alleges that Defendant has "a uniform practice of rounding the actual time worked and recorded . . . always to the benefit of Defendant, so that during the course of their employment, Plaintiffs and . . . class members are paid less than they would have been paid had they been paid for actual recorded time rather than 'rounded' time." (Compl. ¶ 9). It is thus reasonable to assume for purposes of this Motion that nearly all employees were paid less than they would have been paid if Defendant did not have a "uniform practice" of rounding down their time. On Plaintiffs' theory, only those employees whose actual hours worked were the same as the rounded time for which they were paid would have no compensable injury. It was thus reasonable for Defendant to assume that, for the purposes of the waiting time penalties claim, all or nearly all employees discharged thirty days or more before the filing of the complaint would be eligible for maximum waiting time penalties. *See Jauregui*, 28 F.4th at 994 (9th Cir. 2022) ("not unreasonable for [Defendant] to assume that the vast majority (if not all) of the alleged violations [] at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty.").

       Similarly, the court in *Blossom v. Waldorf Astoria Employer, LLC*, 2024 WL 709212 (C.D. Cal. Feb. 21, 2024), found that the "Labor Code violations described in the complaint [did not] ubiquitously impact[] all separated employees" because, for example, the complaint alleged Labor Code violations that were only suffered by some employees that were "required to show their identification to security in order to be allowed to drive inside the premises." *See id.* at *4–5 (finding that the Labor Code violations described in the complaint do not "ubiquitously impact[] all separated employees"); (Motion at 11). In contrast to *Blossom*, Defendant here may draw a reasonable inference from the Complaint that all or nearly all members of the California Labor Sub-Class suffered Labor Code violations because they were subjected to Defendant's alleged rounding policy.

1    In *Greene v. Dollar Tree Distribution, Inc.*, 2024 WL 5317313 (C.D. Cal. Oct. 21, 2024), the court found that the language of the Complaint does not support a plausible assumption that each former employee is entitled to waiting time penalties. There, the Complaint included language that "[d]efendants, at times, willfully failed and refused to timely pay Plaintiffs and the Class, or some of them, all final wages due at the termination of employment." *See id.* at *7. Here, Plaintiffs point to no such language in the Complaint, and, indeed, the Complaint more plausibly supports the inference that it seeks waiting time penalties on behalf of all members of the California Labor Sub-Class who were terminated. *See, e.g.*, (Compl. ¶¶ 9, 19 ("As a pattern and practice, Defendant regularly failed to pay Plaintiffs and other members of the California Class their correct wages and accordingly owe waiting time penalties pursuant to Cal. Labor Code § 203)).

Moreover, nearly all the cases cited by Plaintiff, including *Garcia*, *Blossom*, and *Greene*, were decided before the Ninth Circuit issued its decision in *Perez v. Rose Hills Co.*, 131 F.4th 804 (9th Cir. 2025), which reaffirmed that the determination of a violation rate for the purposes of calculating amount in controversy should be "ascertain[ed] . . . by looking at the plaintiff's complaint." *Id.* at 809. *Perez* pointed out that, just because a defendant "did not submit evidence justifying a particular violation rate" does not mean its assumed violation rate was "unreasonable[,] simply because another equally valid assumption may exist." *Id.* And, if a defendant's assumption of a violation rate is unreasonable, a plaintiff is "free to propose" a rate that is more reasonable. *See id.* at 810. Here, Plaintiffs have not done so and, as described above, the Court finds that Defendant's assumptions upon which its amount in controversy calculation rests are reasonably based in the language of the Complaint.

For the foregoing reasons, Defendant has met its burden to show at least $8,678,400 is in controversy on the waiting time penalty claim alone, exceeding CAFA's jurisdictional threshold. *See Ibarra*, 775 F.3d at 1198 (may calculate an amount in controversy "using reasonable assumptions underlying the defendant's theory of damages exposure"). The

Court therefore declines to analyze Plaintiffs' argument that Defendant fails to provide support for an attorneys' fees award and other claims. *See* (Motion at 17–18).

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES the Motion.

**IT IS SO ORDERED.**

DATED:  July 28, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE